TOLEDO BAR ASSOCIATION *v.* BARTLETT.

[Cite as Toledo Bar Assn. v. Bartlett (1974),
39 Ohio St. 2d 100.]

(D. D. No. 74-1—Decided July 10, 1974.)

*Mr. Eugene N. Balk, Mr. Jamille G. Jamra, Mr. Edward A. Kemper, Mr. James M. Morton, Jr.,* and *Mr. Joseph P. Sheehy,* for relator.

*Mr. Frank W. Cubbon, Jr.,* for respondent.

*Per Curiam.* This court has reviewed and considered the entire record, the objections of respondent and the

briefs very carefully. The objections to the findings are overruled. In accordance with the recommendation of the Board of Commissioners on Grievances and Discipline, we dismiss Specification No. 4.

The findings of fact of the board in connection with Specifications Nos. 1, 2, 3 and 5 we find to be supported by the overwhelming weight of the evidence presented at the hearing and such findings are affirmed.

We adopt as conclusively proven by the record the findings of fact with respect to Specification No. 1, as follows:

"1. On March 22, 1965, the respondent clearly undertook to represent Richard M. Brayton in connection with a promissory note included within the guardianship of Richard M. Brayton's sister, Marian Hollopeter. * * *

"2. On May 6, 1965, respondent caused himself to be appointed as the guardian of the estate of Marian Hollopeter, whose assets included the promissory note theretofore distributed to the estate in 1959.

"3. Respondent, during the period of his service as the guardian of the estate of Marian Hollopeter (May 6, 1965 through July 9, 1968) took no steps to determine the validity of, or to enforce collection of the promissory note duly distributed to the estate of Marian Hollopeter.

"4. Respondent failed to include the existence of the promissory note in his inventory filed on August 9, 1965 * * * with the Probate Court of Lucas County, Ohio, in the guardianship estate of Marian Hollopeter.

"5. Respondent on July 16, 1968, caused the said promissory note to be cancelled as of March 16, 1966, and, contemporaneously therewith, caused a new promissory note to be issued by Richard M. Brayton to respondent in the amount of $3,400.00 for fees 'as guardian and attorney.'

"6. Although the cancellation was dated as of March 16, 1966, the actual cancellation and issuance of the new note took place on July 16, 1968 * * * seven days after the death of Marian Hollopeter, respondent's ward.

"7. Respondent contended during the course of this

hearing, and in various hearings before the courts in Toledo, Ohio, that 'from the beginning there was no note owed the guardianship estate of Marian Hollopeter by Richard M. Brayton' * * *. Respondent arrives at this conclusion by arguing that the proper application of rental payments from the real property on Foraker, Toledo, Ohio, together with certain other items, would have paid off the note, as bequested under the will of Garfield M. Brayton, long before respondent became guardian of the estate of Marian Hollopeter. The contention of respondent points up the fact that the existence or nonexistence of the note must be reached by argument, underscoring the existence of conflicting contentions.

"8. The board finds that there was a direct and obvious conflict between the interest of Richard M. Brayton and the guardianship estate of Marian Hollopeter with respect to the debt evidenced by the promissory note distributed to the guardianship estate of Marian Hollopeter in 1959.

"9. The board further finds that, since Marian Hollopeter was confined to the Toledo State Hospital, requiring the appointment of and services of a guardian, there was no possibility of Marian Hollopeter giving her consent to the employment of either an attorney or a guardian, who also represented the adverse interests of her brother, Richard M. Brayton, in the promissory note.

"10. The board, therefore, finds that the respondent violated both the spirit and the word of Canon 6 of the Canons of Professional Ethics, in that the respondent represented conflicting interests without the consent of all concerned, and, further, in that the respondent failed in his obligation to represent his client, Marian Hollopeter with undivided fidelity.

"11. The board further finds that the violation of Canon 6 of the Canons of Professional Ethics was aggravated by respondent by virtue of the fact that respondent failed to report the facts of the evident conflict to the court having jurisdiction over the guardianship. * * *

"12. The board further finds that respondent violated

Canon 11 of the Canons of Professional Ethics in that in respondent's action in cancelling the promissory note and causing a new promissory note to be issued to respondent, respondent engaged in an action whereby, for his personal benefit, he took advantage of his incompetent client and his ward, Marian Hollopeter.

"13. The board further finds that respondent violated Canon 22 of the Canons of Professional Ethics in that, in not disclosing to the court, having jurisdiction over the guardianship of the estate of Marian Hollopeter, the existence of a potential conflict between his representation of the maker of the promissory note, and the estate as holder of the promissory note, respondent did not conduct himself before the court with candor and fairness. Indeed, in the board's opinion, the conduct of respondent amounted to a fraud upon the court. * * *"

We agree with these findings and conclusions of the board with regard to Specification No. 2 as recorded:

"1. The respondent, while guardian for the estate of Marian Hollopeter, occupied, rent free, property of respondent's ward located at 2616 Foraker, Toledo, Ohio.

"2. The respondent did not obtain the authority of the Probate Court before so occupying the said real property.

"3. In so occupying the real property of respondent's ward, respondent violated, technically, the provisions of Ohio Revised Code Section 2109.43 and Section 2109.44.

"4. However, the board finds that there is no convincing evidence that the occupancy of the real property was not for the benefit of the ward. The board bases this finding upon the fact that there is credible evidence in the record indicating the necessity of a caretaker for the properties to prevent vandalism and there is an absence of any testimony to the contrary.

"5. The board, therefore, finds that while respondent failed in his duty under the cited provisions of the Ohio Revised Code, respondent nonetheless was justified in his occupancy of the property for the protection of the ward's estate.

"6. The board, therefore, finds that the occupancy of the property amounts technically to a violation of Canon 11 of the Canons of Professional Ethics in that respondent's action in occupying the property of 2616 Foraker, Toledo, Ohio, on its face, may be construed as taking advantage of respondent's client and ward for his personal benefit, but that such violation was not harmful to the ward and amounted more to nonfeasance than malfeasance."

We further adopt as conclusively established by the record the findings of fact with respect to Specification No. 3, as follows:

"1. Respondent received rental income which he did not deposit in one or more depositaries, in violation of Section 2109.41 of the Ohio Revised Code.

"2. Respondent admitted, during the course of the hearings, that the funds received by him in his name as fiduciary for his ward, Marian Hollopeter, were retained and maintained in cash, rather than being deposited.

"3. The board, however, finds that the weight of the credible evidence in this hearing did not support the allegation that respondent commingled the funds received nor was there any sufficient evidence of a monetary loss to the guardianship from respondent's actions.

"4. The board finds that respondent in his actions with respect to the monies collected by him, on behalf of his ward, violated Canon 11 of the Canons of Professional Ethics in that the method used by respondent in handling the funds so received by him made it impossible for respondent to report or account properly for such funds.

"5. The board further finds that respondent violated Canon 32 of the Canons of Professional Ethics in that, in failing to deposit the funds received as required by Section 2109.41 of the Ohio Revised Code, respondent failed to observe the statute law of the state of Ohio."

We adopt the findings with respect to Specification No. 5 as conclusively established, as follows:

"1. Specification No. 5 is a general specification.

"2. The board finds, with respect to the application of

Specification No. 5, that the violation of the Ohio Revised Code as specified in Specification No. 2 and Specification No. 3 violates the prohibition of Canon 32 of the Canons of Professional Ethics in that, respondent failed to observe the statute law of the state of Ohio.

"3. Respondent has consistently argued that, as guardian, he was not acting as an attorney, and, therefore, was not subject to the Canons of Professional Ethics. The board finds that, at the very least, respondent was acting as his own attorney, while also acting as guardian, and that, in either case, the admonition to 'observe and advise his client to observe the statute law' brings respondent well within the ambit of Canon 32 of the Canons of Professional Ethics."

In view of respondent's flagrant violations of Canons 6, 11, 22 and 32 of the Canons of Professional Ethics, together and cumulatively, it is the judgment of this court that respondent be permanently disbarred from the practice of law.

*Report confirmed and judgment accordingly.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.